Good morning, Your Honor. Good morning. You may proceed, sir. May it please the Court, I'm Jim Whalen, representing Mr. Mumford in his appeal from the District Court's denial of a Section 2255 petition making a claim under Johnson. I think this morning I'll start off first by addressing the procedural default issue that has been raised by the government. The government raised this issue both at the District Court level and again on appeal. At the District Court level, the judge denied or ruled against the government on this issue, finding that to hold that Mr. Mumford's claim was procedurally defaulted would in effect blunt the retroactive effect of Johnson and Welch. The government has repeated that argument on appeal, and I think it's worthwhile pointing out first the chronology of this case. The defendant was sentenced in July of 2012. His direct appeal was denied in February of 2013. Johnson was not decided until June 26 of 2015. I think it's clear that Mr. Mumford was making a truly novel legal claim in line with the Reid decision. In Johnson, the Court actually overturned existing Supreme Court precedent in that it specifically overruled the Sykes case. It was also overturning a near-unanimous body of law that had developed among the circuits and most of the district courts throughout the country. This Court's decision in Childs, which was a 2005 case, summarized the applicable law throughout the country and basically said that no circuit had adopted or accepted the argument that the residual clause of the Armed Career Criminal Act was void for vagueness. So this is a different situation than what you had in the Bowsley case that was relied upon by the government, where in Bowsley there was actually a circuit split. And in addition to that, there was a tremendous volume of commentary in legal periodicals by legal scholars raising the question that was ultimately decided in the Bailey case. We didn't have that here. In fact, I think it's worth noting that in the certiorari petition that was filed by Johnson, he did not raise the void for vagueness issue. The Court raised that sua sponte. So it was not apparent, even to Johnson's counsel, that this was an issue that needed to and should have been raised. So I don't think that the government's argument that this issue was procedurally defaulted is well-founded in this case. So I'd like to turn now to really the fighting issue in this case, which is whether first-degree robbery under Iowa law, as the first-degree robbery statute that was in effect when Mr. Mumford was convicted, is a crime of violence under the force clause. It's clearly not an enumerated offense under the Armed Career Criminal Act. Once the residual clause goes out, it can't be swallowed by the gaping maw of the residual clause. So the only way it could possibly qualify would be if this court finds that it has the elements necessary to qualify under the force clause of the Armed Career Criminal Act. Help me with the biggest hurdle for me in your case. The government says look at your own case, Mumford's own case, in the Iowa courts, and my goodness, that makes this very clear. Well, actually, I don't think it makes it clear at all. I think, if anything, Mumford's own case rebuts the essential argument here in that the summary of the elements and the marshalling instructions in Mumford's case clearly shows that he was only convicted under the second alternative of 711.2, that's the Iowa statute, which provides that a robbery is elevated to first-degree robbery if you are armed with a dangerous weapon. Now, I know that the government has also made an argument that somehow Mr. Mumford's counsel's concession under the facts of that case, and he did specifically limit that concession to the facts of that case, that the use of a firearm under 902.7, which was a parole enhancement statute, and being armed with a dangerous weapon under 711.2, the first-degree robbery statute, were equivalent. But I think what he may very well have meant was that, simply for purposes of that argument, that a dangerous weapon was equivalent to a firearm because there had been a change in the Iowa statute where, initially, I think the parole enhancement statute provided that it only applied to a firearm, whereas in the robbery statute it applies to a dangerous weapon. I would also point out that Mr. Mumford and his counsel at that time were not an authority. Their opinion was certainly not binding on any other Iowa court. Should the court have looked at the Shepard documents in this case? The court did look at the Shepard documents, and I think that... The question was, should it? Should it have? In this case, I don't think it really makes any difference because I don't think it makes a difference whether we apply the strict categorical approach or the modified categorical approach because we know from the jury instructions in this case which alternative of the statute Mr. Mumford was convicted under. And those jury instructions clearly show that Mumford was only convicted under the armed with a dangerous weapon. It looked at the wrong documents. Is that right? Yeah, I think the district court in this ruling relied upon the preliminary complaint in this case. Trial information or whatever. And that, you know, normally that would... Normally the trial information or the indictment would be a document that the court could look at under the modified categorical approach. But here, I think the jury instructions trump that because the jury instructions show what this jury was actually required to find beyond a reasonable doubt. The doubt was specifically what? What did they find? They specifically found that he was armed with a dangerous weapon in the commission of the robbery. There's an argument that armed means used. I think that that argument is a little bit fanciful. I think it's more wishful thinking than anything. The statute, if we look at the plain language of the statute, which should always be the starting point of any analysis, it says armed. And if we look at the legislative history of that statute, it is very clear that the Iowa legislature intended that the first degree robbery statute would be broad enough to encompass people who merely possessed a firearm as opposed to people that actually displayed, brandished, or pointed the firearm. I think the Sharkey case that's cited in the brief makes that point. The government, I think, has also tried to incorporate the definition of dangerous weapon into its argument that being armed somehow connotes actual use or intent to use. And I think that that argument, again, is whatever validity it has is undermined in this case by the fact that here the jury was specifically instructed that a firearm is per se a dangerous weapon. I did want to leave a little time for rebuttal. Thank you. Thank you. We'll hear from the government. Good morning, Ms. Loxa. Good morning, Your Honors. May it please the Court. Mr. Whalen. What Mr. Whalen has to demonstrate is that there is no realistic probability that Iowa would apply the first degree robbery statute to conduct that does not involve force or the threat of force causing bodily injury or physical pain. Now, the Supreme Court in Moncrief v. Holder really counseled against digging down into the weeds and using what they sort of starkly called judicial imagination in order to determine what position the state courts would take. And in this case, every one of the cases that we're talking about, when you look at the facts, the dangerous weapon was used. In law, the defendant's co-defendant had a knife and pulled it on one of the victims. In Sharkey, the defendant confronted the gas station employees, pulled a gun out of a paper bag, and pointed it at them, demanding the keys to the cash register. And all Sharkey says is that under the first degree robbery statute, the government doesn't have to prove intent to cause death or serious bodily injury versus the intent can be inferred from the presence of the dangerous weapon. But Sharkey does not say that you can convict somebody of armed with a dangerous weapon and you don't have to show the gun or the weapon. The victim doesn't even have to know that it's there. That's the argument that the Ninth Circuit adopted in the Parnell case. But Parnell is distinguishable because in Parnell, the Ninth Circuit looked at the Massachusetts case law. And under Massachusetts case law, the courts was very specific and specifically held that a dangerous weapon need not be generally or openly displayed. And there was no need for the victim to be aware of the weapon's presence. Now, that's a far cry from what we have in the cases cited by Mr. Whalen. Well, help me, you didn't reply back on the Langston case? Yes. Now, tell me why Langston isn't highly relevant here. It's an Iowa going armed with intent statute. Yes, and that's different than what this case is. Because going armed with intent requires the specific intent to do harm. And Langston was initially, well, the Langston case, I think Mr. Whalen argues that, well, if you're going to go with the government in this case, you've got to overrule Langston. But I don't think that's true, because in Langston, the initial three-judge panel was reviewing this under the residual clause, not under the force clause as we are here. So I don't think that you would be forced to overrule Langston in ruling for the government in this case. And I think, you know, the clearest indication of what armed with a dangerous weapon means under Iowa law is also contained in the Sharkey case. Because there, the court said, this is precisely the kind of case that armed with a dangerous weapon is. And the facts of Sharkey were that the defendant pulled the firearm and pointed it or threatened the individuals with it. Also, when you look at Mr. Mumford's case, the facts of his case, the victim testified at trial that he had a long-handled or a long-barreled pistol, and he pistol-whipped him with it. All of the cases that are talked about in both briefs, in the Iowa cases, the weapon was used. And I think the thing, the problem with the law case is it's the only case that even comes close to saying what Mr. Whalen would like it to say. But the problem- The name of that case is what? Law. But the problem with the law decision is it doesn't consider the statutory definition under Iowa law of dangerous weapon. And when you look at the statute that defines a dangerous weapon, it requires that the weapon be used. Now, the legislature could have said, just have to possess it, and that's enough. But that's not what they said. They said when you, when our statutes are talking about a dangerous weapon, it requires use. But not pointing and not displaying, right? That's the holding of law? You know what it says? Yes. That you can be armed under this very statute, and you don't have to point it, and you don't have to display it. Right? The law says that. I'm looking at the words of it. Yes. And that's contrary to the statutory definition of the dangerous weapon. And I think that- Are you saying the Iowa Supreme Court was wrong in law? I think when you, law is, I think was from the 70s. And I think if you look at- 81. 81. Close. No, no, no. Go ahead. I think if you look at the fact that this, the statute defining dangerous weapon was created, if it was present at that time, then I think they were wrong. If they, if it wasn't current, or if it wasn't present at that time, it is now. And I think that that shows the legislator's intent when you're talking about what armed with a dangerous weapon means. I'm- I guess you're saying in your brief that law has been, in effect, overruled? Well, but on other grounds, though, Judge. So, but, you know, I question using a case that has, is really no longer good, good law. The Iowa Supreme Court in 1981 could not possibly have anticipated what the Supreme Court has done since then. No, I agree. And I think that it's, it reminds me of a phrase that Scott Turow used in his book 1L about his first year at Harvard Law School. He described reading his first contract cases as though he were stirring concrete with his eyelashes. And I think that sometimes- Something out of the movie Paper Chase. Yes, yes. But that's sort of where we are in this area of the law. But I think that the common sense approach is that armed requires use. And I think that if it didn't, there is no reason for the legislator later to say that a dangerous weapon has to be used. I am going to rely on the arguments made in the brief regarding the procedural default issue. I would state that I will be retiring from the U.S. Attorney's Office on November 30th. And it has been a pleasure and an honor to practice before this court these last 30 years. And in particular, to practice with Mr. Wayland. Thank you. Thank you. We thank you for your reference to that. And we thank you for your professionalism with your opponents, as it were. We'll miss you. We wish you the best. And in some sort of, those of us of my age envy the fact that you won't have to deal with Massa Johnson. Good luck and happy retirement. Thank you very much, Your Honor. Thank you, Ms. Luxa, for your kind words. And you certainly have the best wishes of our office as well. I want to address a couple of things rather quickly. The argument based on Libby that we have to show this reasonable probability. I think if you look at the plain language of the statute, it really answers the essential question there. The plain language of the statute only requires that the person be armed. If the Iowa legislature wanted to require that the person accused of first-degree robbery actually use the weapon, they could have said, use the weapon. They've certainly had ample opportunity to change that. I think that it's very clear from Sharkey and the legislative history cited therein that they intended to have actually a broader definition as applied to first-degree robbery than the definition that applies to other offenses. Thank you, Your Honor. Would you indulge in questions? Of course, Your Honor. I'm wondering if you have a position on whether we ought to remand this case under Walker, U.S. v. S. Walker case. Well, my position would be no, that that issue has not been raised by the government and, in effect, has been waived. Thank you. Well, I guess we could always raise it to Ms. Bonte. Something that we even are giving that thought, your response would be? I guess my response would be that if you are inclined to consider doing that, that we would like the opportunity to brief that issue at this level before it's remanded. Well, thank you for your response to that and to everything else. Thank you, Your Honor. The case is now submitted and we will take it under consideration.